Rockefeller Univ. v Aetna Cas. & Sur. Co. (2024 NY Slip Op 04838)

Rockefeller Univ. v Aetna Cas. & Sur. Co.

2024 NY Slip Op 04838

Decided on October 03, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 03, 2024

Before: Kern, J.P., Oing, Kapnick, Kennedy, Shulman, JJ. 

Index No. 654425/19 Appeal No. 2686 Case No. 2024-00112 

[*1]The Rockefeller University, Plaintiff-Respondent,
v
Aetna Casualty & Surety Company, et al., Defendants-Appellants, Riunione Adriatica Di Sicurta Now Known as Allianz S.P.A., et al., Defendants.

O'Melveny & Myers LLP, New York and O'Melveny & Myers LLP, Washington, DC (Jonathan D. Hacker of the bar of the District of Columbia, admitted pro hac vice, of counsel), for Federal Insurance Co. & Insurance Co. of North America, appellants.
Dentons US LLP, New York (Erika M. Lopes-McLeman of counsel), for Aetna Casualty & Surety Company and the Travelers Indemnity Company, appellants.
Blank Rome LLP, New York (Natasha Romagnoli of counsel), for respondent.

Order, Supreme Court, New York County (Mary V. Rosado, J.), entered on or about December 8, 2023, which, to the extent appealed as limited by briefs, denied the insurer defendants' motion to dismiss the fourth and fifth causes of action, unanimously affirmed, with costs.
Plaintiff has stated a cause of action for breach of the implied covenant of good faith and fair dealing (the fourth cause of action), as the allegations regarding defendant insurers' wrongful conduct are not duplicative of the contract claims (see New York Botanical Garden v Allied World Assurance Co. [U.S.] Inc., 206 AD3d 474, 476 [1st Dept 2022]). Rather, the cause of action for breach of covenant arises out of the ways in which defendant insurers have allegedly frustrated the purpose of the policies at issue, including the failure to promptly resolve claims stemming from the 2019 Child Victims Act; ignoring plaintiff's requests for copies of decades-old policies; failing to issue coverage decisions; refusing to pay any settlement of the underlying claims; refusing to properly investigate the underlying claims; and pressuring plaintiff to discontinue this action.
The damages sought in the breach of implied covenant claim are not duplicative of those sought in the breach of contract claim, as the consequential damages arising from the former claim may differ from those sought in the latter claim, as the second amended complaint caps the breach of contract claim at the liability limits of the policies. (see Bi-Economy Mkt., Inc. v Harleysville Insurance Co. of N.Y., 10 NY3d 187, 195 [2008]). Plaintiff argues that defendant insurers' wait-and-see scheme over the past half-decade placed great financial strain on it, resulting in the self-funding of over $700 million in settlements and defense costs from the limited unrestricted portion of its endowment, lost investment opportunities and endowment income, additional debt, increased debt service costs, and attorney's fees to enforce plaintiff's rights in this action.
Additionally, the complaint sufficiently alleged facts demonstrating defendant insurers' gross disregard of plaintiff's interests as required to state a claim for breach of the implied covenant of good faith and fair dealing (see Pavia v State Farm Mut. Auto. Ins. Co., 82 NY2d 445, 453 [1993]). There is no specific formula to determine whether an insurer acted in good faith (Federal Ins. Co. v North Am. Specialty Ins. Co., 83 AD3d 401, 402 [1st Dept 2011]). Rather, the court considers factors such as "plaintiff's likelihood of success on the issue of liability, the potential damages award, the financial burden on each party if the insurer refuses to settle, whether the claim was properly investigated, the information available to the insurer when the demand for settlement was made, and any other relevant proof tending to establish or negate the insurer's good faith in refusing to settle" (Id.) Here, plaintiff's complaint sufficiently alleged that defendant insurers' [*2]wait and see strategy and claims handling practices were employed to limit defendants' financial exposure, in gross disregard of plaintiff's interests. As such, Supreme Court properly denied defendant insurers' motion to dismiss the fourth cause of action.
Plaintiff has also stated a cause of action for violation of the General Business Law § 349(a) (the fifth cause of action), which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in the state" (see Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc., 37 NY3d 169, 176, 177 [2021]). Plaintiff has sufficiently pleaded independent injury, alleging that defendant insurers violated the statute by engaging in a deceptive wait-and-see strategy that has damaged plaintiff and potentially other policyholders, sexual abuse survivors, and the insurers' investors (see Hobish v AXA Equitable Life Ins. Co., 171 AD3d 494, 494-495 [1st Dept 2019]). We reject defendants' argument that this action merely presents a "private contractual dispute" between "sophisticated parties," and that plaintiff has failed to allege "consumer-oriented" impact as necessary to sustain a section 349(a) claim, as the complaint alleges a standard form policy provided to multiple consumers (see Acquista v New York Life Ins. Co., 285 AD2d 73, 83 [1st Dept 2001]; see also Himmelstein, 37 NY3dat 177).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 3, 2024